**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:03CR141(JCH) |
| | : | |
| v. | : | |
| | : | February 14, 2006 |
| DAVID JOWERS | : | |

**GOVERNMENT'S SECOND SUPPLEMENTAL**
**MEMORANDUM IN AID OF SENTENCING**

By order dated January 27, 2006, and in response to the limited remand from the Court of Appeals, this Court invited the parties to file written submissions concerning whether the Court should have imposed a non-trivially different sentence in this case. For the reasons set forth below, the Government respectfully submits that the Court's original sentence of 115 months should remain undisturbed.

I.   **PROCEDURAL BACKGROUND**

On May 20, 2003, a federal grand jury sitting in New Haven returned a one-count indictment against the defendant, charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Following his arrest on June 5, 2003, the defendant appeared before United States Magistrate Judge William I. Garfinkel and entered a plea of not guilty to the offense charged in the indictment. The Government moved for pretrial detention pursuant to 18 U.S.C. § 3142, on the grounds that the defendant posed a risk of flight. The defendant was detained pursuant to an order of temporary detention, pending a hearing on the Government's motion. On June 10, 2003, following a detention hearing, Magistrate Judge Garfinkel determined that there were conditions of release that would reasonably assure the defendant's continued appearance at Court. The Court set conditions of release that included, *inter alia*, that the defendant be subject to electronic monitoring.

On August 6, 2003, the defendant appeared before United States Magistrate Judge Holly B. Fitzsimmons and entered a plea of guilty to Count One of the indictment. On the same day, the defendant also entered into a cooperation agreement with the Government, pursuant to which it was contemplated that he would work in concert with agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") to investigate other firearms offenses in New Haven. Sentencing was scheduled for October 24, 2003. The defendant's bond status remained unchanged following his guilty plea, based on the expectation that he would cooperate with the ATF.

Following his guilty plea, the defendant and his then-attorney, Thomas P. Belsky, Esquire, scheduled an appointment with ATF agents at the ATF office in New Haven in order to discuss the defendant's prospective cooperation with that agency. Before arriving at the office, however, the defendant advised Attorney Belsky that he had had a change of heart and no longer wished to cooperate with the ATF. On August 20, 2003, before the Government could file a motion for detention pending sentencing, the defendant cut off the ankle bracelet that held his electronic monitoring device and absconded. On September 4, 2003, Magistrate Judge Garfinkel issued a warrant for the arrest of the defendant, based on his violation of the conditions of his release.

On October 7, 2003, Deputy United States Marshals arrested the defendant in West Haven. At the time of his arrest, the defendant was in possession of a loaded shotgun, which he admitted that he had recently stolen. On February 18, 2004, a federal grand jury sitting in New Haven returned a two-count indictment against the defendant charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and contempt of court, in violation of 18 U.S.C. § 401(3). That case, captioned *United States v. David Jowers*,

3:04CR38(AHN), was tried to a jury in October 2004, and resulted in the defendant's conviction on both counts. The defendant is currently awaiting sentencing in that case.

At a sentencing hearing on July 9, 2004, this Court made a Guidelines calculation, determining that the defendant was at Offense Level 24 and Criminal History Category VI, resulting in a Guidelines range of 100 to 125 months. The Court then sentenced the defendant to a term of imprisonment of 115 months, to be followed by three years of supervised release, and a $100 special assessment. In determining this sentence, the Court declined to enhance the defendant's sentence for obstruction of justice and also declined to give the defendant any credit under the Sentencing Guidelines for acceptance of responsibility. The Court also declined to exercise its authority to depart downward, as requested by the defendant.

The defendant filed a timely notice of appeal. Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the defendant filed a motion for a remand for re-sentencing. By order filed June 7, 2005, and upon consent of both parties, the Second Circuit remanded the case for this Court to determine whether resentencing was necessary in light of *Booker*.

## II.    LIMITED REMANDS IN LIGHT OF BOOKER AND CROSBY

In *United States v. Booker*, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory,

18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 743. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at 765-66.

The Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*Crosby*, 397 F.3d at 113 (emphasis added). When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id.* at 114.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to

determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Id.* at 117 (emphasis in original). In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id.* (emphasis added). "In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant . . . ." *Id.* at 120. The defendant should, however, have an "opportunity . . . to avoid resentencing by promptly notifying the district judge that resentencing will not be sought." *Id.* at 118. "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with the [Sentencing Reform Act], *Booker/Fanfan*, and this opinion, including an appropriate explanation, *see* § 3553(c)." *Id.* at 120.

## III. DISCUSSION

The only question before the Court on this limited remand is whether the Court would have imposed a nontrivially different sentence on July 9, 2004, had it been operating under the advisory guideline regime. Based on the Court's reasoning, as expressed at the sentencing hearing, it is clear that the Court would have imposed the same sentence. Accordingly, no resentencing is warranted.

The Court's calculation of the defendant's offense level was based on facts that the defendant himself admitted in his Stipulation of Offense Conduct, *viz.*, that he possessed a firearm, as charged in the indictment, and that he had previously been convicted of the felony offenses alleged in the indictment. The Court expressly rejected the defendant's argument that the Sixth Amendment principles articulated in *Blakely v. Washington* preclude a district court from enhancing a defendant's criminal history category, based on prior convictions. *See* Transcript of Sentencing Hearing at 45.

Alternatively, the Court stated that if the "Guidelines are determined to be unconstitutional in their totality, the Court would be faced with a sentence of zero to 120 months because the maximum is 120 months and there's no minimum and the Court would determine that a just and appropriate sentence would likewise be 115 months under that sentencing regime." *See* Transcript at 45.

The Court's methodology for arriving at a sentence is entirely lawful under *Booker* and *Crosby*; the only difference is that in the pre-*Blakely* sentencing regime, the Guidelines were mandatory and in the post-*Booker* sentencing regime, the Guidelines are advisory. In light of the Court's expressly stated alternative sentence, which assumed that the Guidelines would be held unconstitutional, there is no basis for arguing in this remand that the Court would have imposed a nontrivially different sentence had it been operating under the advisory guideline regime.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court's sentence of 115 months should remain undisturbed.

                                      Respectfully submitted,

                                      KEVIN J. O'CONNOR
                                      UNITED STATES ATTORNEY

By:       FELICE M. DUFFY
           ASSISTANT UNITED STATES ATTORNEY
           Federal Bar No. CT21379

For:      JOHN A. MARRELLA
           ASSISTANT UNITED STATES ATTORNEY
           Federal Bar No. CT 19473
           157 Church Street, 23d Floor
           New Haven, Connecticut 06510
           Telephone: (203) 821-3700

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent by fax and U.S. Mail, postage prepaid, this 14th day of February, 2006, to:

Frank O'Reilly, Esquire
87 Ruane Street
Fairfield, CT 06824
Fax: (203) 319-0124

and by hand delivery to:

Keith Barry
United States Courthouse
915 Lafayette Boulevard
Bridgeport, CT 06604

                                      _____
                                      FELICE M. DUFFY
                                      Assistant United States Attorney